**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**CHARLOTTE L. MILLS,**                                   07-CV-773-BR

                        **Plaintiff,**                   **OPINION AND ORDER**

**v.**

**MICHAEL J. ASTRUE,**
**Commissioner of Social**
**Security,**

                        **Defendant.**


**SARA L. GABIN**
Sara L. Gabin, PC
4500 S.W. Kruse Way, Suite 100
Lake Oswego, OR 97035
(503) 620-3171

            Attorney for Plaintiff

**KARIN J. IMMERGUT**
United States Attorney
**BRITANNIA I. HOBBS**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
(503) 727-1117

1   -   OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
**THOMAS M. ELSBERRY**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075
(206) 615-2112

       Attorneys for Defendant


**BROWN, Judge.**

     Plaintiff Charlotte L. Mills seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Mills's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

     Following a review of the record, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.


### ADMINISTRATIVE HISTORY

     Mills filed her application for DIB on March 31, 2005. Tr. 58-60.[1] She was last insured for disability benefits on

---

    [1] Citations to the official transcript of record filed by the Commissioner on October 23, 2007, are referred to as "Tr."

2  -  OPINION AND ORDER

December 31, 2001.  Tr. 13.  Mills's application was denied
initially and on reconsideration.  Tr. 22-23.  An Administrative
Law Judge (ALJ) held a hearing on February 1, 2006, at which
Mills was represented by an attorney.  Tr. 134-80.  Mills and lay
witnesses Larry Mills and Arlene Hickerson testified at the
hearing.  Tr. 135, 161-80.  A vocational expert (VE) was present
but did not testify.  Tr. 135-37.

The ALJ issued an opinion on February 23, 2006, in which he
found Mills is not disabled and, therefore, is not entitled to
benefits.  Tr. 13-17.  The Appeals Council denied Mills's request
for review.  Tr. 4-6.  The ALJ's decision, therefore, became the
final decision of the Commissioner on May 7, 2007.


## BACKGROUND

Mills was 61 years old at the time of the hearing before the
ALJ.  Tr. 139.  Mills is a high-school graduate and has worked as
a small-parts assembler and packager, a restaurant food-
preparation worker, a motel maid, and a laundry worker.  Tr. 108,
139-41.  After being laid off from her work as a small-parts
assembler and packager in 1991, Mills held a job as a restaurant
food-preparation worker for four years from 1992 to 1996, but she
has not held any other job for more than a few weeks.  Tr. 82,
108, 139-41, 157-61.  Mills has been out of work since 2001.
Tr. 117.

Mills lived with her parents until her early thirties. Tr. 121.  Although she moved into a mobile home near her first job as a small-parts assembler and packager, she was under consistent supervision by her mother; her brother, Larry Mills; and her sister, Arlene Hickerson.  Tr. 117-18, 120-21, 171-72. In June 2005 following the death of her mother, Mills moved into a mobile home on Larry Mills's property.  Tr. 117-18.

Mills has been diagnosed with generalized anxiety disorder and borderline intellectual functioning with dependent personality features.  Tr. 125.  Mills alleges a disability onset date of December 31, 1996.  Tr. 58.


## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).  To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision

4   -   OPINION AND ORDER

if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Robbins,* 466 F.3d at 882.  The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation.  *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005).  The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).


## DISABILITY ANALYSIS

### I.   The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential

inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 404.1520. Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). *See also* 20 C.F.R. § 404.1520(a)(4)(I).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). A severe impairment "significantly limits" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). *See also Ukolov*, 420 F.3d at 1003. The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(a), (b). Such abilities and aptitudes include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking; understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting.

*Id.*

The Step Two threshold is low.  "[A]n impairment can be
considered as not severe only if it is a slight abnormality
which has such a minimal effect on the individual that it would
not be expected to interfere with the individual's ability to
work . . . .  [T]he severity regulation is to do no more than
allow the Secretary to deny benefits summarily to those
applicants with impairments of a minimal nature which could never
prevent a person from working."  Soc. Sec. Ruling (SSR) 85-28 at
*2 (Nov. 30, 1984)(internal quotations omitted).  The Ninth
Circuit described Step Two as a "*de minimus* screening device to
dispose of groundless claims."  *Smolen*, 80 F.3d at 1290.  *See
also Webb v. Barnhart*, 433 F.3d 683, 686-88 (9th Cir. 2005).
"Great care should be exercised in applying the not severe
impairment concept."  SSR 85-28 at *4.

The Court need not set out the standards for the remaining
steps because the ALJ determined Mills was not disabled at Step
Two and, therefore, did not continue the five-step evaluation.


## **ALJ'S FINDINGS**

At Step One, the ALJ found Mills has not engaged in
substantial gainful activity since her alleged onset date of
December 31, 1996.  Tr. 16.

At Step Two, the ALJ found Mills's borderline intellectual

functioning is a medically determinable impairment.  Tr. 16.
The ALJ concluded, however, that Mills's impairment does not
"significantly limit her ability to perform basic work-related
activities; therefore, the claimant does not have a 'severe'
impairment." Tr. 17.  In light of his determination that Mills
did not have a severe impairment as of December 31, 2001, the ALJ
found Mills was not disabled and, as a result, was not entitled
to DIB.  Tr. 17.  Thus, the ALJ did not proceed past Step Two.

## DISCUSSION

Mills contends the ALJ erred by (1) improperly discrediting
the lay-witness testimony of Larry Mills and Arlene Hickerson;
(2) improperly assessing the opinion of Mills's examining
psychologist, James E. Bryan, Ph.D.; and (3) improperly finding
at Step Two that Mills does not have any severe impairments.

**I.   Lay Testimony.**

**A.   Larry Mills and Arlene Hickerson.**

Mills asserts the ALJ erred when he found the testimony of
Larry Mills and Arlene Hickerson to be of little value in the
assessment of the severity of Mills's impairments.

Lay testimony regarding a claimant's symptoms is competent
evidence that the ALJ must consider unless he "expressly
determines to disregard such testimony and gives reasons germane
to each witness for doing so."  *Lewis v. Apfel*, 236 F.3d 503, 511

8   -  OPINION AND ORDER

(9th Cir. 2001).

**1.  Larry Mills.**

Larry Mills, Mills's brother, testified at the hearing before the ALJ that he has consistently helped Mills with daily activities such as performing routine maintenance in her home and helping prepare her meals.  Tr. 162-63.  Larry Mills also attested Mills had been "slow" all of her life and always had struggled with learning new tasks.  Tr. 166.  He testified even though Mills was able to maintain steady employment as a small-parts assembler and packager, she depended on the benevolence of her supervisors to be "considerate of her capabilities." Tr. 163.  Larry Mills testified Mills eventually lost that job because she was unable to maintain the required pace.  Tr. 164.

**2.  Arlene Hickerson.**

Hickerson, Mills's sister, testified at the initial hearing that Mills has always been both mentally and physically "slow" and has difficulty following simple instructions such as how to make a sandwich or a salad.  Tr. 167-70.  Hickerson testified Mills often requires repetition of simple instructions and "a lot of reassurance" to complete basic tasks.  Tr. 170-72. She also testified Mills lost several jobs because she was too slow to maintain pace and had difficulty following directions. Tr. 168-69.

In addition, Hickerson attested even though Mills had her

own mobile home before moving close to Larry Mills, Mills spent most of her time at a retirement center with their mother who had an extra bedroom. Tr. 171-72. Hickerson testified she and Larry Mills decided to move Mills closer to Larry Mills after their mother died. Tr. 173. Hickerson attested she and her brother provide for all of Mills's financial needs. Tr. 173-74.

### 3.  ALJ's Opinion.

The ALJ appears to have rejected the testimony of both lay witnesses on the ground that "[t]he siblings testified at the hearing that [Mills] lost her jobs because she was 'slow,' but they testified that they never had the opportunity to see her performing at work." Tr. 15. The ALJ also indicated in a footnote that "there is nothing in the record to suggest [Mills] was laid off due to her performance." Tr. 15.

The ALJ did not provide any reason why the fact that Mills's siblings never observed her at work undermines their testimony that she has been slow all of her life and has always struggled with learning new tasks, following basic instructions, and maintaining pace. In addition, the record contains consistent statements by Mills, Larry Mills, and Hickerson that Mills lost several jobs because she is "slow." Tr. 147-51, 163-66, 167-72. In fact, the record contains only a single statement to the contrary: Larry Mills and Hickerson indicated in interviews by Dr. Bryan that Mills's loss of her job as a small-

10  -  OPINION AND ORDER

parts assembler and packager was "apparently not related to any decline in her job performance in and of itself." Tr. 117. Larry Mills and Hickerson, however, qualified their statements by emphasizing that Mills's father got her the job; that she performed the same basic, routine tasks for most of her 22 years there; and that she had "benevolent supervisors" who accommodated her impairments. Tr. 117. Moreover, the ALJ did not discredit Mills's testimony that she was given poor evaluations for not keeping the proper pace and that her supervisors did not give her new or difficult tasks. Tr. 149-58. There is not, in fact, any evidence in the record to contradict the testimony of Mills, Larry Mills, and Hickerson that Mills was able to work as a small-parts assembler and packager because her employer accommodated her impairments and that she lost other jobs as a laundry worker, a motel maid, and restaurant food-preparation worker as a result of those impairments. Thus, the record supports the lay-witness testimony of Larry Mills and Hickerson that Mills has difficulty following simple instructions and keeping pace with routine tasks and that she lost several jobs as a result of those impairments.

Accordingly, the Court finds the ALJ erred when he failed to provide legally sufficient reasons germane to each lay witness supported by substantial evidence in the record for rejecting the testimony of lay witnesses Larry Mills and Arlene Hickerson. *See*

*Lewis*, 236 F.3d at 511.

## II.  Medical Opinions.

Mills also contends the ALJ erred by improperly assessing the opinion of her examining psychologist, Dr. Bryan.

When the record contains conflicting medical evidence, the ALJ is responsible for determining credibility and resolving the conflict.  *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002). An ALJ may reject an examining or treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record."  *Thomas*, 278 F.3d at 957 (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). When the medical opinion of an examining or treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Id*.  *See also Lester*, 81 F.3d at 830-32.

### A.  Dr. Bryan's Opinion.

On August 3, 2005, Dr. Bryan performed a battery of psychological tests to evaluate Mills's "intellectual and adaptive abilities . . . regarding factors which may impede her independent functioning or ability to maintain employment." Tr. 116.  Dr. Bryan also conducted interviews of Mills, Larry Mills, and Hickerson as a group and individually.  Tr. 115.

Dr. Bryan noted Larry Mills and Hickerson stated Mills has poor concentration, has difficulty following simple instructions, can barely write, and depends on her siblings to answer questions several times each day concerning basic daily activities. Tr. 117.  Dr. Bryan noted specific examples provided by Mills's siblings as to her inability to follow simple instructions; for example, she cannot follow directions to drive to new or unfamiliar places or to place Larry Mills's newspaper in his mailbox despite two demonstrations as to which mailbox to use. Tr. 118.  Larry Mills and Hickerson also reported Mills cannot prepare a complete meal for herself beyond frozen dinners, cannot use public transportation independently, cannot manage her own mail, and has difficulty managing her basic medical needs beyond a simple scratch.  Tr. 118.

On the basis of these interviews and Dr. Bryan's extensive testing of Mills's intellectual and adaptive functioning, Dr. Bryan diagnosed Mills with generalized anxiety disorder ("contributing to significant distress. . . . [and] general indecisiveness, which prevents her from being able to make many routine decisions") and borderline intellectual functioning with dependent personality features.  Tr. 124-25.  Dr. Bryan reported Mills "remains strongly reliant, to a maladaptive extent, upon siblings in making simple, routine decisions."  Tr. 124-25. Dr. Bryan concluded:

13  -  OPINION AND ORDER

> Her future entails increased dependency on
> others, given that it will be difficult for
> her to learn new skills and it is very
> unlikely that she would acquire any
> employable skills that would allow her to
> support herself independently.
>
> While her scores fall within the
> Borderline range, these are largely in
> comparison to others of her own age.  In
> contrast, many of these same scores are
> within the Extremely Low range in comparison
> with the normative reference group comprised
> of younger adults representing the mainstream
> of the current workforce.  In comparison to
> this group, she consistently scores well
> below the 5th [percentile] for the
> population.
>
> Functionally, she performs in a manner
> very similar to those with Mental Retard-
> ation.  Were it not for her significantly
> stronger literature skills and isolated
> subtest strengths, diagnosis of mental
> retardation would be plain.  Overall, she is
> found to be multiply-compromised, and will
> remain dependent on others.

Tr. 125.  Dr. Bryan wrote an addendum to his findings on March 3,

2006, in which he concluded Mills is "functioning within what is

known as the Borderline range, e.g., significantly below that

associated with normal, routine abilities."  Tr. 129.

**B.   ALJ's Opinion.**

The ALJ concluded Dr. Bryan's opinion "is certainly

legitimate and deserves due consideration."  Tr. 15.

Nevertheless, the ALJ discredited Dr. Bryan's opinion on several

grounds, and, even though he noted Dr. Bryan's diagnoses of

generalized anxiety disorder or dependent personality features,

he did not discuss either diagnosis in his assessment of Mills's

14  -  OPINION AND ORDER

impairment.  Tr. 15, 125.

As noted, Dr. Bryan is an examining physician, and,
therefore, the ALJ may only discredit Dr. Bryan's opinion as to
Mills's psychological impairments if the ALJ gives clear and
convincing reasons supported by substantial evidence in the
record for doing so.  *See Thomas*, 278 F.3d at 957.  The ALJ,
however, did not identify any medical evidence in the record that
contradicts Dr. Bryan's opinions.

The ALJ discredited Dr. Bryan's opinion on the ground that
Dr. Bryan conducted his assessment of Mills nearly four years
after her date last insured.  Tr. 15.  The ALJ determined
Dr. Bryan's opinion does not accurately reflect Mills's
impairments as they existed in 2001 because "the claimant's
siblings testified that [Mills's] condition has gradually gotten
worse over the last few years."  Tr. 15.  Although the ALJ does
not identify specific testimony, he appears to reference
Hickerson's testimony that "my brother and I both think that
things are getting worse mentally."  Tr. 176.  Hickerson,
however, also testified "[w]e think that actually, [Mills's
impairments] have always been there, but we think they have
gotten worse even."  Tr. 176.  Mills's counsel followed up by
asking Hickerson, "Did you notice these same problems before
. . . December 31, 2001?".  Tr. 176.  Hickerson responded, "Oh
yeah, they were there."  Tr. 176.  Hickerson explained Mills's

limitations were more apparent to her and Larry Mills at the time
of the hearing because they had to increase caring for Mills more
after their mother died in 2005.  Tr. 176-77.  Moreover,
Dr. Bryan concluded Mills's "condition is stable" and did not
suggest anywhere in his report that Mills's impairments had only
developed recently.  Tr. 125.  Thus, the ALJ's assertion that
Plaintiff was not as impaired in 2001 as Dr. Bryan concluded in
August 2005 is not supported by the lay testimony or by any
medical opinion in the record.  Furthermore, the ALJ is not
permitted to draw medical inferences as to the onset date of an
impairment when the onset date is not clear from the medical
evidence.  The Ninth Circuit has held:

> In the event that the medical evidence is not
> definite concerning the onset date and
> medical inferences need to be made, SSR 83-20
> requires the administrative law judge to call
> upon the services of a medical advisor and to
> obtain all evidence which is available to
> make the determination.

*DeLorme v. Sullivan*, 924 F.2d 841, 848 (9th Cir. 1991).  *See also*
SSR 83-20 at *2-*3.  Moreover, the Commissioner bears the burden
of developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841
(9th Cir. 2001).  When important medical evidence is incomplete,
the ALJ has a duty to recontact the provider for clarification.
20 C.F.R. § 404.1527(c)(2).  *See also Brown v. Heckler*, 713 F.2d
441, 443 (9th Cir. 1983)(ALJ has a "special duty to fully and
fairly develop the record" even when claimant is represented by

16  -  OPINION AND ORDER

an attorney).

The ALJ also discredited Dr. Bryan's opinion on the ground that he relied heavily and uncritically on the subjective reports of Mills, Larry Mills, and Hickerson.  Tr. 15.  The ALJ, however, does not identify any evidence in the record to support his assertion.  Tr. 15.  In fact, Dr. Bryan's report contains roughly four pages in which he addresses Mills's background information and another four pages discussing her objective test performance and results.  Tr. 116-25.  The addendum to Dr. Bryan's report also contains an additional three pages of raw test data. Tr. 126-28.  Moreover, the ALJ does not indicate how Dr. Bryan's reliance on Mills's background information, including a factual error about the length of her employment at a single job, affects the results of Dr. Bryan's objective psychological testing discussed at length in his "Conclusions and Recommendations." Tr. 119, 122-25.  In any event, the Court notes a psychologist must rely to a certain extent on the subjective reports of patients, but that fact alone is not sufficient to discredit the psychologist's opinion.

The ALJ also discredits Dr. Bryan's opinion on the ground that Dr. Bryan examined Mills "not in an attempt to [treat her] symptoms, but rather, through attorney referral and in connection with an effort to generate evidence for the current appeal. Further, the doctor was presumably paid for the report."  Tr. 15.

17  -  OPINION AND ORDER

The ALJ does not identify any evidence in the record to support his assertion that Mills paid Dr. Bryan to examine him. Moreover, the ALJ's suggestion that Dr. Bryan's professional opinion is somehow biased in favor of Mills because he examined her on a referral by an attorney also is not supported by the record.  In any event, these arguments could be used to discredit any examining physician who was paid by a claimant to evaluate her impairments and also to discredit the opinions of physicians hired by the Social Security Administration to review a claimant's medical records.

On this record, therefore, the Court concludes the ALJ erred when he discredited Dr. Bryan's uncontroverted opinion because he did not provide legally sufficient reasons supported by substantial evidence in the record for doing so.  When the ALJ does not provide a legally sufficient basis for rejecting a treating or examining physician's opinion, the Court may credit that opinion as a matter of law.  *Lester*, 81 F.3d at 834. Accordingly, the Court credits the opinion of Dr. Bryan.

**III. Severity of Impairments at Step Two.**

Mills contends the ALJ erred when he found at Step Two that Mills's borderline intellectual functioning was not severe.

As noted, a medically determinable impairment is severe unless it "has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability

to work."  SSR 85-28 at *2.  The testimony from Mills, Larry
Mills, and Hickerson establishes Mills has significant difficulty
learning new tasks, following simple instructions, and
maintaining the pace required to perform a job.  This testimony
is supported by Dr. Bryan's opinion that Mills is overly
dependent on family members to perform even basic tasks and is
unlikely to be able to learn new tasks or to acquire employable
skills due to intellectual functioning that is "significantly
below that associated with normal, routine abilities."  Tr. 129.
In addition, the ALJ did not address the impact of Dr. Bryan's
diagnosis of generalized anxiety disorder on Mills's ability to
perform work-related tasks.

This record does not establish Mills's impairments "would
not be expected to interfere" with her ability to work.  *See* SSR
85-28 at *2.  The Court, therefore, concludes Mills has satisfied
the Ninth Circuit's "*de minimus*" threshold at Step Two that
establishes her impairments are severe within the meaning of the
Social Security regulations.

Accordingly, the Court concludes the ALJ erred when he
concluded at Step Two that Mills's borderline intellectual
functioning was "not severe" and failed to consider the severity
of Mills's anxiety disorder with dependent personality features.

**REMAND**

The decision whether to remand this case for further
proceedings or for the payment of benefits is within the
discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178
(9th Cir. 2001).

The decision whether to remand for further proceedings or
for immediate payment of benefits generally turns on the likely
utility of further proceedings. *Id.* at 1179. The court may
"direct an award of benefits where the record has been fully
developed and where further administrative proceedings would
serve no useful purpose." *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for
determining when evidence should be credited and an immediate
award of benefits directed." *Harman*, 211 F.3d at 1178. The
court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting such
> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id.* The second and third prongs of the test often merge into a
single question:  Whether the ALJ would have to award benefits if
the case were remanded for further proceedings. *Id.* at 1178 n.2.

Here the Court finds a remand for further proceedings is
required because the ALJ erred when he found at Step Two of the

20  -  OPINION AND ORDER

five-step sequential analysis that Mills's impairments were not
severe.  Thus, further proceedings are necessary to determine
whether Mills was disabled within the meaning of the Social
Security Act prior to December 31, 2001, her last date insured.

Section 406(b) of the Social Security Act "controls fees for
representation [of Social Security claimants] in court."
*Gisbrecht v. Barnhart*, 535 U.S. 789, 794 (2002)(citing 20 C.F.R.
§ 404.1728(a)).  Under 42 U.S.C. § 406(b), "a court may allow 'a
reasonable [attorneys'] fee . . . not in excess of 25 percent of
the . . . past-due benefits' awarded to the claimant."  *Id*. at
795 (quoting 42 U.S.C. § 406(b)(1)(A)).  Because § 406(b) does
not provide a time limit for filing applications for attorneys'
fees and Federal Rule 54(d)(2)(B) is not practical in the context
of Social Security sentence-four remands, Federal Rule of Civil
Procedure 60(b)(6) governs.  *Massett v. Astrue*, 04-CV-1006
(Brown, J.)(issued June 30, 2008).  *See also McGraw v. Barnhart*,
450 F.3d 493, 505 (10th Cir. 2006).  To ensure that any future
application for attorneys' fees under § 406(b) is filed "within a
reasonable time" as required under Rule 60(b)(6), the Court
orders as follows:  If the Commissioner finds Plaintiff is
disabled on remand and awards Plaintiff past-due benefits and if,
as a result, Plaintiff intends to submit an application for
attorneys' fees under § 406(b), Plaintiff shall submit any such
application within 60 days from the issuance of the Notice of

21  -  OPINION AND ORDER

Award by the Commissioner.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to 42 U.S.C. § 405(g) for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 9th day of July, 2008.


/s/ Anna J. Browm

_____

ANNA J. BROWN
United States District Judge

22  -  OPINION AND ORDER